Temple University—Of The Commonwealth System of Higher Education and The Hospital Association of Pennsylvania, on Behalf of Itself and Themselves and All Others Similarly Situated, Plaintiffs *v.* Pennsylvania Department of Public Welfare and Helen B. O'Bannon, Secretary, Pennsylvania Department of Public Welfare, Defendants.

Argued September 11, 1979, before President Judge Bowman and Judges Wilkinson, Jr., Rogers, Blatt, DiSalle, Craig and MacPhail. Judges Crumlish, Jr. and Mencer did not participate.

*James H. Stewart, Jr.,* with him *Nauman, Smith, Shissler & Hall, Matthew M. Strickler,* and *Ballard, Spahr, Andrews & Ingersoll,* for plaintiffs.

*John A. Kane,* Assistant Attorney General, for defendants.

Opinion by Judge Blatt, October 26, 1979:

Temple University and the Hospital Association of Pennsylvania (plaintiffs) initiated this equity action against the Department of Public Welfare (DPW) seeking to enjoin the implementation of certain DPW regulations. We have previously disposed of the DPW's preliminary objections, *Temple University v. Department of Public Welfare,* 30 Pa. Commonwealth Ct. 595, 374 A.2d 991 (1977) *(Temple II),* and before us now is the plaintiffs' motion for summary judgment.

Specifically at issue is the DPW's policy regarding the reimbursement of hospitals for expenses incurred in caring for Medical Assistance patients for whom some care is necessary but for whom acute care in a hospital is unnecessary and for whom space cannot be found in available skilled nursing or intermediate care facilities.

Previous DPW regulations had allowed it to deny reimbursement or to authorize reimbursement in whole or in part when such misutilization of facilities occurred. We held, however, in *Department of Public Welfare v. Temple University*, 21 Pa. Commonwealth Ct. 162, 166, 343 A.2d 701, 704 (1975) *(Temple I)*, that:

> where a patient may no longer be in need of continued acute hospital care but does need some lower level care, . . . it would be an abuse of administrative discretion to deny reimbursement to hospitals which have diligently put forth every effort to locate, without success, an appropriate lesser care facility. . . .

Subsequently, the DPW adopted the regulation now in dispute, which provides as follows:

> Except as noted below, Medical Assistance payments are not made to hospitals either for specific noncovered services and procedures or for prolonged hospitalization which is not medically justified.
>
> . . . .
>
> Prolonged hospitalization includes extended hospitalization for:
>
> . . . .
>
> (q) Patients who no longer require acute patient care. However, the Department will make payment to the hospital for skilled nursing or intermediate care provided for a patient in a certified bed in a certified and ap-

proved hospital base skilled nursing or inter-
mediate care unit.

Section 9421.74(q) of the Medical Assistance Manual,
7 Pa. B. 2180.

In essence, therefore, the DPW argues here that it
will not now reimburse hospitals for acute care which
is not "medically justified" but it will reimburse hos-
pitals for skilled nursing or intermediate care at the
rates established for such services but only if the hos-
pital or a part thereof is certified to provide such
services. The plaintiffs argue, however, that the cur-
rently applicable DPW regulation is (1) in violation
of our previous decision in *Temple I,* (2) a violation
of the constitutional guarantee of equal protection,
(3) beyond the Department's authority, and (4) in-
consistent with federal law.

As to our holding in *Temple I,* we decided that it
was an abuse of administrative discretion for the
DPW to deny reimbursement to a hospital which had
made a diligent effort to find a lesser care facility.
Under the regulations then in effect, however, the
DPW had the discretion to deny reimbursement.
Here, the situation is different because there is no
such discretion provided for in the currently appli-
cable regulation. In reality, therefore, it is the man-
ner of reimbursement rather than the refusal to re-
imburse which is here under attack, and we believe
that the issues raised here are not controlled by our
decision in *Temple I.*

As to equal protection, the plaintiffs argue that
the current regulation distinguishes unreasonably be-
tween patients who require acute in-patient hospital
care for purely medical reasons and those who re-
ceive such care because there is no suitable facility
to which they can be transferred. We believe, how-
ever, that the regulation treats equally all Medical
Assistance patients who require skilled nursing or

intermediate care, reimbursement being made only at the rate established for the particular service and only when the care is provided by a certified facility. In addition, if the hospital is certified to provide the lesser care needed, the DPW will reimburse a hospital for patients who do not need acute care but who cannot be transferred. The plaintiffs, here, are unwilling to maintain lesser care facilities, yet they are demanding reimbursement at the rate established for acute care. They have not, however, been deprived of equal protection; on the contrary, the regulation is a reasonable attempt by the DPW to promote legitimate economic interests. Any disparity in reimbursement which results from the *application* of the regulation is brought about by the failure of the plaintiffs to comply with the rational standards for reimbursement which have been prescribed, and can hardly be considered invidious discrimination. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification . . . in practice . . . results in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485 (1970) (citations omitted).

As to the argument that the regulation is unreasonable and beyond the DPW's authority in that it attempts to coerce hospitals to operate skilled nursing or intermediate care facilities in order to obtain reimbursement for the patients who do not need acute care, we believe that there is no real coercion or duress here, for the plaintiffs need not participate in the Medical Assistance program at all. *Cf. Temple I, supra.* There is, moreover, no evidence before us that providing the services required would be unduly burdensome to the plaintiffs. In fact, we are informed by affidavit[1] that 29 hospitals in the Com-

---

[1] Affidavit of Michael A. Berchock, Chief of Reimbursement Methods Division, Department of Public Welfare.

monwealth are now certified to provide skilled nursing or intermediate care.[2] We do not believe that the DPW has abused its authority in adopting the regulation in contention, for it is clear that the courts of this Commonwealth may not interfere with an administrative agency's legislative rulemaking power in absence of an abuse of power, *see Steward v. Department of Public Welfare,* 39 Pa. Commonwealth Ct. 530, 395 A.2d 1043 (1979), and " 'it is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to another. Error or unwisdom is not equivalent to abuse.' " *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 77, 313 A.2d 156, 169 (1973) (quoting *American Telephone & Telegraph Co. v. United States,* 299 U.S. 232 (1936)).

Finally, as to the plaintiffs' assertion that the regulation in dispute is inconsistent with federal law, we are not convinced that the situation at issue here is covered by federal statute or regulations. While it may be covered under the regulations as to Medicare, to which the plaintiffs attempt to draw an analogy, we are dealing here with Medicaid, and the plaintiffs concede "a deficiency in current HEW regulations as to Medicaid on the subject." In fact, the argument of the plaintiffs can really be reduced to the proposition not that federal law is violated but that reimbursement by the DPW for acute care when a transfer cannot be made would not be inconsistent

---

[2] The plaintiffs have submitted an affidavit which indicates that a majority of these hospitals would not qualify for certification under regulations recently adopted by the Department. This evidence is inconclusive, however, because it does not demonstrate either the difficulty the hospitals had with meeting the previous standards or the difficulty of meeting the new standards. We cannot conclude, therefore, on the basis of this evidence that certification and operation of such facilities is unduly burdensome to the plaintiffs.

with federal law. Without considering further the complexities of the plaintiffs' argument, we believe it sufficient to note that they simply have not sufficiently demonstrated any inconsistency between the federal law and the regulation here in question.

We shall therefore deny the plaintiffs' motion for summary judgment.

ORDER

AND Now, this 26th day of October, 1979, the motion for summary judgment of Temple University and the Hospital Association of Pennsylvania is denied, and judgment is hereby entered in favor of the Department of Public Welfare and Helen B. O'Bannon.