IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Xun F. Lin, Xian Mei Chen, Xun : 
Jing Lin, Mei L. Liu, Bao Yin : 
Huang, Jian Zhen Liu, and : 
Chang Pine Yang, : 
                  Appellants : 
 : 
        v. : 
 : 
The Board of Revision of Taxes : No. 1261 C.D. 2015
of The City of Philadelphia : Argued: February 8, 2016


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI           FILED: February 24, 2016


       Xun F. Lin, Xian Mei Chen, Xun Jing Lin, Mei L. Liu, Bao Yin Huang, Jian Zhen Liu, and Chang Pine Yang (Landowners) appeal the Court of Common Pleas of Philadelphia County's (trial court) order affirming the Board of Revision of Taxes of the City of Philadelphia's (Board) denial of their petition *nunc pro tunc* for tax abatement with regard to certain real properties situated in Philadelphia, Pennsylvania. For the reasons that follow, we affirm.

**I.**

In April 2012, Landowners purchased the real properties situated at 916, 918, 920, 922 and 924 Green Street, Philadelphia, Pennsylvania, by individual deeds subdividing the property previously deeded as 916–924 Green Street. On October 1, 2012, the Department of Licenses and Inspections issued Lin Xun Fu separate building permits for each of the properties for "construction of a 3rd floor addition with related interior/exterior improvements for use as a two dwelling units [*sic*] and commercial." (Reproduced Record [R.R.] at 21a–25a.) Each of the permits stated, "construction to be in accordance with Permit/Plans 414212." (*Id.* at 22a–24a.) Regarding applications for exemptions, each permit provided, "**Tax Exemption (Abatement):** …Applications for all new construction and commercial improvements are due within sixty (60) days of permit issuance. Residential rehab and builder/developer applications are due by December 31st of the year of permit issuance." (*Id.* at 21a–24a.)

Subsequently, on July 30, 2013, the Department of Licenses and Inspections issued Lin Xun Fu a revised building permit with respect to 918 Green Street describing the permit as "Revise[d] Permit 414215 to document floor plan layout changes to residential portion of building." (*Id.* at 26a.) The revised permit contains the same language as the original permits regarding the deadline for filing exemption applications.

On December 23, 2013, the following applications for property tax abatements were filed in the City of Philadelphia's Office of Property Assessment (Assessment Office): Xun Fu Lin for 916 Green Street; Xian Mei Chen and Xun

Jing Lin for 918 Green Street; Mei L. Liu and Bao Yin Huang for 920 Green Street; Jian Zhen Liu for 922 Green Street; and Chang Pine Yang for 924 Green Street. The Assessment Office denied the applications as untimely filed, determining that they did not comply with the December 31st deadline governing applications for residential rehabs.

Landowners then appealed to the Board, seeking *nunc pro tunc* approval[1] of the tax abatement applications on the basis that they were filed pursuant to Section 19-1303(2) of the Philadelphia Code[2] to which no deadline

[1] "[A]n appeal nunc pro tunc is intended as a remedy to vindicate the right to an appeal where that right has been lost due to certain extraordinary circumstances." *Commonwealth v. Stock*, 679 A.2d 760, 764 (Pa. 1996).

[2] Section 19-1303(2) of the Philadelphia Code, which was created for purposes of preserving and improving the City's residential neighborhoods, states in pertinent part:

> B. *Eligible Neighborhoods.*
>
> * * *
>
> (2) Therefore, person making improvements to eligible residential properties within the definition contained in this ordinance within any of the foregoing eligible neighborhoods, may apply for, and the Board of Revision of Taxes may grant, a real estate tax exemption upon such improvements in the amount and in the manner hereinafter provided.
>
> C. *Definitions.*
>
> (1) In this Section the following definitions shall apply:
>
> (a) *Eligible residential property* shall be any property containing one or more dwelling units located in an eligible neighborhood; or any property containing one or more dwelling units which has been, or, upon request, is, certified by the

**(Footnote continued on next page…)**

3

Department of Licenses and Inspections or by the Department of Health as unfit for human habitation; or any property containing one or more dwelling units which has been the subject of any order to be vacated, condemned, or demolished by reason of noncompliance with laws, ordinances, or regulations of the City of Philadelphia.

(b) *Reserved.*

(c) *Improvements* shall be any repairs, constructions, or reconstruction, including additions and alterations, which have the effect of rehabilitating a structure so that it becomes habitable or attains a higher degree of housing safety, health or amenity, or is brought into compliance with the laws, ordinances, or regulations of the City of Philadelphia. Ordinary upkeep and maintenance shall not be deemed an improvement.

* * *

F. *Procedure for Obtaining Exemption.*

(1) At the time a building permit for the construction of an improvement, for which exemption is desired, is approved, the permit issuing division of the Department of Licenses and Inspection [*sic*] shall notify, in writing, the taxpayer of the possibility of an exemption under this ordinance, the taxpayer shall apply to the Board of Revision of Taxes for such exemption. The application shall be in writing upon forms prescribed by the Board of Revision of Taxes.

(2) The Board of Revision of Taxes shall determine whether the exemption shall be granted. A copy of the approved request for exemption shall be forwarded by the Board of Revision of Taxes to the taxpayer.

(3) The Board of Revision of Taxes in determining whether the exemption shall be granted shall inquire of the Department of Revenue of the City of Philadelphia whether the taxpayer is indebted to the City or School District of Philadelphia for or on

applies. The Board, after reviewing the parties' memoranda of law, affirmed without further explanation, and an appeal was taken to the trial court.

On the civil cover sheet that was filed in the trial court, the plaintiff's name is listed as "XUN F. LIN," and the total number of plaintiffs is denoted as one. (Certified Record [C.R.], Civil Cover Sheet.) The notice of appeal filed with the trial court also listed Xun Fu Lin as the sole appellant and stated, in pertinent part: "Appellant, Xun Fu Lin, hereby appeals the adjudication of the BOARD OF

---

**(continued…)**

account of any delinquent taxes, charges, fees, rents or claims. The Board of Revision of Taxes shall withhold approval of the application until the taxpayer pays or enters into an agreement with the City of Philadelphia to pay the tax, charge, fee, rent or claim. The Board of Revision of Taxes shall withdraw approval where the taxpayer fails to pay delinquent taxes, charges, fees, rents or claims during the exemption period or fails to comply with his agreement to pay as provided herein. Any withholding or withdrawal of the exemption by the Board of Revision of Taxes pursuant to this subsection shall not be construed to stay the tolling of the exemption period for which a taxpayer would otherwise qualify.

(4) Upon completion of the improvement, the taxpayer shall notify the Board of Revision of Taxes, so that the Board may assess the improvements separately for the purpose of calculating the amount of assessment eligible for exemption.

(5) The Board of Revision of Taxes shall notify the taxpayer of the amount of assessment eligible for exemption.

(6) Appeals from the reassessment and the amount eligible for the exemption may be taken by the City or by the Taxpayer as provided by law.

Philadelphia Code §19-1303(2).

5

REVISION OF TAXES made on November 31, 2013….” (C.R., Notice of Appeal.) Nonetheless, the properties at issue were indicated to be 916–924 Green Street.

During oral argument, Landowners' counsel presented argument with regard to all five properties, stating “This is a little complicated because it was one property subdivided into five recently, so there's five building permits here, but somehow the [Board] denied it under one account number for the unsubdivided property, but there's five.” (R.R. at 105a.) At no time before the trial court did opposing counsel object or otherwise suggest that the other Landowners were not parties to the appeal.

Ultimately, the trial court affirmed the Board's decision, reasoning that pursuant to Philadelphia Code Section 19-1303(2), the Department of Licenses and Inspection was required to and did notify Landowners of the possibility of an exemption, including the requirement that applications be filed by December 31st of the year in which the permits were issued—that is, December 31, 2012. Because Landowners' applications were not filed until December 2013, nearly one year after they were due, the trial court found them untimely. Because the trial court determined that the Philadelphia Code vests the grant or denial of tax abatements with the Board, as well as the manner in which they are reviewed and granted, the trial court upheld the Board's imposition of the December 31st deadline, despite the fact that the deadline did not expressly appear in Section 19-1303(2) of the Code. Further, the trial court determined that Section 8-407 of the Philadelphia Code, which was once a component of the Plumbing Code, no longer

6

existed as it was repealed in the 1990s and, at any rate, it was inapplicable. With respect to *nunc pro tunc* relief, the trial court found that regardless of whether Landowners were confused and, therefore, believed that a 60-day deadline applied, they did not satisfy even that deadline. This appeal followed.[3]

## II.

## A.

On appeal,[4] we first address the School District of Philadelphia's (District)[5] contention that because Xun F. Lin is the only Landowner who is properly a party to this appeal, the only issues before us are those involving 916

---

[3] Mr. Lin filed a motion for reconsideration, asserting the following, additional arguments: (1) because the application for 918 Green Street was revised on July 30, 2013, the appropriate deadline for that property was December 31, 2013; (2) because all of the building permits are related, the revised permit for 918 Green Street effectively revised all permits, thereby providing a deadline of December 31, 2013, for all properties; and (3) *nunc pro tunc* relief is appropriate because, in addition to being confused by the lack of a deadline in Section 19-1303(2)(F)(1) of the Philadelphia Code, that section was amended sometime during 2012 to change the deadline from 60 days to December 31st, thereby compounding Landowners' confusion. In a supplemental memorandum of law, Mr. Lin also asserted that Section 8-407 of the Philadelphia Code "prohibits administrative agencies such as [the Assessment Office] from legislating or promulgating regulations without notice and public hearings thereon." (Supplemental Memorandum of Law, at 2.) Although Mr. Lin cited Section 8-407 of the Philadelphia Code, he actually relied upon and quoted the language contained in Section 8-407 of the Philadelphia Home Charter. Regardless, the trial court denied this motion.

[4] In cases where the trial court does not permit an untimely appeal to be filed *nunc pro tunc*, our review is limited to determining whether the trial court abused its discretion or committed an error of law. *Maxion v. Department of Transportation, Bureau of Driver Licensing*, 728 A.2d 442, 444 n.3 (Pa. Cmwlth. 1999).

[5] By order dated December 29, 2015, this Court granted the District's motion to be deemed a party in the action, noting that it was a party before the trial court.

7

Green Street. Specifically, the District claims that although all Landowners were parties to the appeal before the Board, only Mr. Lin appealed the Board's decision to the trial court and, therefore, only he is a proper party in the instant appeal.

This argument was not raised before the trial court. Normally, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a); see *Siegfried v. Borough of Wilson*, 695 A.2d 892, 894 (Pa. Cmwlth. 1997) ("The appellate court may *sua sponte* refuse to address an issue raised on appeal that was not raised and preserved below…."). Despite the fact that Mr. Lin was the only appellant listed on the civil cover sheet, his counsel, who represented all Landowners, advanced both written and oral arguments in favor of all of his clients. Indeed, during oral argument, he made clear that five properties were at issue, and the trial court issued a ruling and opinion which substantively addressed all of the properties. At no point in time did opposing counsel object.

Countervailing the normal argument that issues not raised below will not be considered, a party's failure to file a timely appeal "renders [its] subsequent appeals untimely and deprives [our Supreme Court] and the lower courts of jurisdiction to grant the relief requested in those appeals." *Lincoln Philadelphia Realty Associates I v. Board of Revision of Taxes of City and County of Philadelphia*, 758 A.2d 1178, 1192 (Pa. 2000). As such, where a jurisdictional issue is present, a court may raise the matter *sua sponte*, and it is clear that jurisdiction may not be conferred by the parties' failure to raise the issue below. *Lashe v. Northern York County School District*, 417 A.2d 260, 263 (Pa. Cmwlth.

1980) (*en banc*); *see also Pheasant Run Civic Organization v. Board of Commissioners of Penn Township*, 430 A.2d 1231, 1233 n.4 (Pa. Cmwlth. 1981). In this case, it is clear from the caption and from the civil cover sheet that Mr. Lin is the only Landowner who appealed to the trial court. Because the other Landowners were not parties to the appeal pending before the trial court, they cannot now join the appeal pending before this Court.

**B.**

Having determined that only Mr. Lin is a party to the instant appeal, we next address his argument that the tax abatement application with respect to 916 Green Street was timely filed in December 2013 because a revised permit was issued for the work in July of that year. In support of this argument, Mr. Lin highlights the language of the revised permit, stating: "Applications for all new construction and commercial improvements are due within sixty (60) days of permit issuance. Residential rehab and builder/developer applications are due by December 31st of the year of permit issuance." (R.R. at 26a.) In other words, Mr. Lin suggests that each time a permit upon which a tax abatement application is based is amended, the deadline for filing the application extends.

**1.**

Notably, this argument was not presented before the Board and was raised before the trial court for the first time in Mr. Lin's motion for reconsideration, after the trial court issued its decision. This Court has previously held that where an issue which could have been raised earlier is raised for the first time in a motion for reconsideration, it is not preserved for appellate review. *See*

*Bedford Downs Management Corporation v. State Harness Racing Commission*, 926 A.2d 908, 924 (Pa. 2007) ("[I]ssues raised for the first time in a reconsideration request, after the agency has issued its adjudication, cannot be regarded as raising the issues while the matter was before the agency."); *Ramsey v. Pennsylvania Milk Marketing Board*, 572 A.2d 21, 25 (Pa. Cmwlth. 1990); *Frankford Hospital v. Department of Public Welfare*, 466 A.2d 260, 262 (Pa. Cmwlth. 1983); *see also Rabatin v. Allied Glove Corporation*, 24 A.3d 388, 391 (Pa. Super. 2011) ("While the issue was included in the subsequently filed motion for reconsideration, issues raised in motions for reconsideration are beyond the jurisdiction of this Court and thus may not be considered by this Court on appeal."). *But see Cagnoli v. Bonnell*, 611 A.2d 1194, 1195–96 (Pa. 1992) (suspending this general rule where an "appellant's first opportunity to raise these issues was at the time of filing his [m]otion for [r]econsideration."). Not only did Landowners fail to raise this issue before the Board, Mr. Lin also failed to raise it before the trial court until after a decision was issued in the matter, despite the fact that there was ample opportunity to do so from the outset.

## 2.

Regardless, we find the argument without merit. Article VIII, Section 2(b)(iii) of the Pennsylvania Constitution authorizes the General Assembly to "[e]stablish standards and qualifications by which local taxing authorities may make uniform special tax provisions applicable to a taxpayer for a limited period of time to encourage improvement of deteriorating property or areas by an individual, association or corporation, or to encourage industrial development by a non-profit corporation." Pa. Const. art. VIII, §2(b)(iii). Pursuant to this authorization, the

10

General Assembly enacted the Local Economic Revitalization Tax Assistance Act (Act)[6], Section 6(a) of which sets forth the procedure for obtaining an exemption:

> Any person desiring tax exemption pursuant to ordinances or resolutions adopted pursuant to this act, shall notify each local taxing authority granting such exemption in writing on a form provided by it *submitted at the time he secures the building permit,* or if no building permit or other notification of new construction or improvement is required, at the time he commences construction. A copy of the exemption request shall be forwarded to the board of assessment and revision of taxes or other appropriate assessment agency. The assessment agency shall, after completion of the new construction or improvement, assess separately the new construction or improvement and calculate the amounts of the assessment eligible for tax exemption in accordance with the limits established by the local taxing authorities and notify the taxpayer and the local taxing authorities of the reassessment and amounts of the assessment eligible for exemption. Appeals from the reassessment and the amounts eligible for the exemption may be taken by the taxpayer or the local taxing authorities as provided by law.

72 P.S. §4727(a) (emphasis added).

Further, Section 2 of the Act, 72 P.S. §4723, provides, "This act shall be construed to authorize local taxing authorities to exempt new construction in deteriorated areas of economically depressed communities and improvements to certain deteriorated industrial, commercial and other business property thereby

---

[6] Act of December 1, 1977, P.L. 237, *as amended*, 72 P.S. §§4722–4727.

implementing Article VIII, section 2(b)(iii) of the Constitution of Pennsylvania." 72 P.S. §4723.

The plain language of Section 6(a), pursuant to which the Philadelphia City Council enacted Section 19-1303(2) of the Philadelphia Code, makes clear that applications for exemptions must be submitted "at the time [an applicant] secures the building permit." 72 P.S. §4727(a). It contains no language providing for extensions based upon the issuance of revised permits. Carried to its logical end, Mr. Lin's interpretation would enable an applicant who is time-barred from filing an application to set the deadline anew, simply by making a trivial change to its plans.

There may well be circumstances, including those of the instant case, in which a revised permit is issued based upon plans amended in good faith. However, both Section 6(a) of the Act and Section 19-1303(2)(F)(4)–(6) of the Philadelphia Code account for this situation. Specifically, Section 6(a) of the Act provides that after completion of the improvement, the assessment agency must assess the improvement and calculate the amount of the assessment eligible for tax exemption. If the landowner disagrees with the assessment, he may appeal to the local taxing authority. In this way, assessments are based on the improvement as *actually completed*, not as envisioned in the original plans.

In the event an assessment is calculated based on the latter instead of the former, a landowner's remedy is to file an appeal, during which a revised building permit would certainly be relevant for purposes of establishing the nature

12

of the improvement and, therefore, the calculation of the exemption-eligible assessment. However, the fact that a revised permit is issued has no relevance to the due date of an application, as that application is not acted upon until completion of the work—be it pursuant to the original permit or a revised permit.

## C.

In passing, Mr. Lin compares Section 19-1303(2) of the Philadelphia Code to Section 19-1303(3) regarding real-estate tax exemptions on improvements to deteriorated industrial, commercial and other business properties. He claims that because Section 19-1303(3) specifies a 60-day deadline for filing abatement applications,[7] whereas Section 19-1303(2) is silent, no deadline governs the filing of applications for abatements with regard to improvements on residential properties. This position implies that a residential property owner who makes an improvement may file an application for abatement *at any time*, including after the exemption period began and after the associated tax years have ended.

---

[7] Section 19-1303(3)(D)(3)(a) applies to improvements to deteriorated industrial, commercial and other business properties and provides, in pertinent part:

> At the time a building permit for the construction of an improvement is applied for, the Department of Licenses and Inspections shall notify the applicant by a printed notice of the possibility of a tax exemption under this bill. Within sixty (60) days of the date the building permit is issued, the taxpayer shall apply to the Board of Revision of Taxes for such exemption. The application shall be in writing upon forms prescribed by the Board of Revision of Taxes and must be filed within the specified time period.

Philadelphia Code §19-1303(3)(D)(3)(a).

The absence of a provision in the Philadelphia Code regarding when applications for residential exemptions must be filed does not mean that there are no filing deadlines. Section 6(a) of the Act, pursuant to which Section 19-1303(2) of the Philadelphia Code was enacted, requires abatement applications to be "submitted at the time [one] secures the building permit." 72 P.S. §4727(a). Mr. Lin's submission nearly 15 months after he obtained a building permit does not satisfy this criteria alone.

## D.

Next, Mr. Lin asserts that in interpreting Section 19-1303(2) of the Philadelphia Code to impose a 60-day deadline or a December 31st deadline, the Assessment Office has violated Section 8-407 of the Philadelphia Home Charter[8]

---

[8] Specifically, Section 8-407 of the Philadelphia Home Charter states, in pertinent part:

§ 8-407. Regulations.

Except as otherwise provided in this charter, in the adoption of regulations, the following procedure shall apply:

(a) The department, board or commission promulgating the regulations shall first submit them for approval to the Law Department and upon receiving such approval file them with the Department of Records where they shall be available for public inspection for thirty days;

(b) The Department of Records shall give public notice of such filing by advertising in the three daily newspapers of the City having the largest paid circulation the fact that regulations relating to a particular subject have been filed with it, and that any person affected thereby may request a hearing. Council may by ordinance adopted by a vote of two-thirds of all of its members specify different or additional requirements for providing public notice of the filing of regulations and the availability of a hearing, in

**(Footnote continued on next page…)**

14

prohibiting administrative agencies from legislating and from promulgating regulations outside of the proper rulemaking procedures.

Essentially, Mr. Lin argues that because Section 19-1303(2)(F)(4)−(6) of the Philadelphia Code does not provide for a specific deadline, the Assessment Office has "legislated" by imposing a deadline of either 60 days from the date on which a permit was issued or on December 31st of the year in which a permit was issued. However, as we discussed above, this issue is waived because it was not presented in any context before the Board, and it was raised before the trial court for the first time in Mr. Lin's motion for reconsideration. *See Bedford Downs Management Corporation*, 926 A.2d at 924; *Ramsey*, 572 A.2d at 25; *Frankford Hospital*, 466 A.2d at 262.

Further, the record is devoid of any evidence supporting the argument that the deadlines were not established in accordance with Section 8-407 of the Philadelphia Home Charter—not unsurprising given that this argument was not raised until after the trial court rendered its decision. The only statements regarding the violation of the Home Charter which, albeit, at times, was incorrectly

**(continued…)**

> accordance with applicable law. Any such ordinance may include
> a requirement that notice be posted on the City's website….

Philadelphia Home Charter §8-407(a)−(b); *see also* Philadelphia Home Charter §8-407 ann. 2 ("Administrative agencies may not legislate. However, they may when appropriately authorized by this Charter, or by statute or ordinance, define and apply through administrative regulations standards established by this Charter or by legislation. Thus regulations afford a means for an administrative agency to exercise powers and to perform duties of law administration and enforcement imposed upon and vested in it by this Charter or by statute or ordinance.").

15

identified as the Philadelphia Code, appear in the supplemental memorandum of law filed with the trial court, the statement of errors complained of on appeal, and in Mr. Lin's brief before this Court. However, it is axiomatic that statements in briefs or legal memoranda do not constitute evidence of record upon which decisions can be based. *See Erie Indemnity Company v. Coal Operators Casualty Company*, 272 A.2d 465, 467 (Pa. 1971) ("[B]riefs are not part of the record, and the court may not consider facts not established by the record."); *Sanders v. Workers' Compensation Appeal Board (Marriott Corporation)*, 756 A.2d 129, 133 (Pa. Cmwlth. 2000) ("[B]riefs filed in this [C]ourt are not part of the evidentiary record and assertions of fact therein which are not supported in the evidentiary record created below may not form the basis of any action by this [C]ourt.").[9]

**E.**

Insofar as Mr. Lin claims that he was entitled to *nunc pro tunc* relief because the Assessment Office's permit form, advising of the deadlines, was confusing and misleading, we disagree. While a notice which is confusing with regard to deadlines for seeking administrative relief may serve as a basis for granting *nunc pro tunc* relief, *see Dwyer v. Department of Transportation, Bureau*

---

[9] Moreover, it is questionable whether Mr. Lin's statement of errors complained of on appeal was sufficient to preserve this issue for our review in that it incorrectly relied upon Section 8-407 of the Philadelphia Code rather than the Philadelphia Home Charter. Vague statements of errors complained of on appeal are waived because "[w]hen a trial court has to 'guess' what issues an appellant is appealing, that is not enough for meaningful review." *Caln Nether Co. v. Board of Supervisors, Thornbury Township*, 840 A.2d 484, 490 (Pa. Cmwlth.), *appeal denied*, 856 A.2d 835 (Pa. 2004). Here, it is clear that the trial court had to "guess" which provision Mr. Lin relied upon, as it noted that the relevant portion of the Plumbing Code was previously repealed. Ultimately, however, we need not address this issue as Mr. Lin otherwise failed to preserve it.

*of Driver Licensing*, 849 A.2d 1274 (Pa. Cmwlth. 2004) (*en banc*), here, any alleged confusion is immaterial. As the trial court highlighted, it is irrelevant whether Mr. Lin mistakenly believed that a 60-day deadline applied to his application rather than the December 31, 2012 deadline, because he failed to satisfy *either* deadline and, in fact, did not file an abatement application until December 23, 2013, nearly a year after it was due.

Accordingly, we find that the trial court did not abuse its discretion or commit an error of law in interpreting the deadlines imposed pursuant to Section 19-1303(2) of the Philadelphia Code and, therefore, we affirm its decision denying Mr. Lin's appeal.

DAN PELLEGRINI, Senior Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Xun F. Lin, Xian Mei Chen, Xun : 
Jing Lin, Mei L. Liu, Bao Yin : 
Huang, Jian Zhen Liu, and : 
Chang Pine Yang, : 
                Appellants : 
              : 
         v. : 
            : 
The Board of Revision of Taxes : 
of The City of Philadelphia : No. 1261 C.D. 2015

# **O R D E R**

AND NOW, this 24th day of February, 2016, the order of the Court of Common Pleas of Philadelphia County in the above-referenced matter is hereby affirmed.

 

_____
DAN PELLEGRINI, Senior Judge