# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Curtis Building   :
Co., Inc.   :
PO Box 415   :
Jenkintown, PA 19046   :
  :
From the Decision of the   :
Lower Providence Township   :
Zoning Hearing Board   :
100 Parklane Drive   :
Eagleville, PA 19403   :   No. 645 C.D. 2021
  :   Argued:  March 7, 2022
Regarding Property at 5th Street   :
Between the House 3002 5th   :
Street and the Lot of Suburban   :
Building Co. Block 21, Units 96   :
and 97 Lower Providence Township,   :
Norristown, PA 19403   :
Parcel No. 43-00-04681-00-1   :
  :
Appeal of:  Lower Providence   :
Township   :

BEFORE:   **HONORABLE RENÉE COHN JUBELIRER,** President Judge
        **HONORABLE ELLEN CEISLER,** Judge
        **HONORABLE LORI A. DUMAS,** Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**     **FILED: November 16, 2022**

Lower Providence Township (Township) appeals from the May 3, 2021 Order of the Court of Common Pleas of Montgomery County (common pleas), reversing the November 12, 2020 Decision of Lower Providence Township Zoning Hearing Board (Board).  The Board denied the application for dimensional variances

(Application) filed by Curtis Building Company, Inc. (Applicant) from Section 143-37(A)(2) of the Township's Zoning Ordinance (Ordinance), LOWER PROVIDENCE TOWNSHIP, PA., ZONING ORDINANCE (ORDINANCE) § 143-37(A)(2) (2020), in order to construct a single-family home on an undersized lot (the Property). The Board found that Applicant did not meet the requirements for obtaining a variance because Applicant failed to address Section 143-145.B.(3) of the Ordinance (Ordinance 662), which established requirements for the merging of adjacent lots and expanded the definition of "same owner." Upon appeal, without taking additional evidence, common pleas reversed the Board's denial of the variance. Common pleas found there was not substantial evidence to support that Charles Breinig (Breinig), Applicant's Vice President, was the same owner of the Property and adjacent properties under Ordinance 662, and, essentially, that Ordinance 662 could not legally require the merger of the Property with adjacent properties. On appeal, the Township requests that this Court either reverse common pleas, or vacate and remand the matter so that the Board can conduct a hearing on the applicability of Ordinance 662 to the Application. For the following reasons, we are constrained to affirm.

## I.     BACKGROUND

### A. *The Application and Ordinance 662*

Applicant owns the Property, which is located at Fifth Street in the Township, and is known as Block 22, Units 96 and 97, and identified as Montgomery County Tax Parcel Number 43-00-04681-00-1. (Board's Decision at 1.)[1] The Property is a vacant, rectangular lot measuring 60 feet wide by 100 feet deep, for a total area of

---

[1] The Board's November 12, 2020 Decision is found at pages 111a through 125a of the Reproduced Record.

6,000 square feet; is located in Township's R-2 Residential Zoning District; and is situated between a vacant lot owned by Suburban Building Company (Suburban) (Suburban Lot) and a residential property owned by Michael Adams (Adams) at 3002 Fifth Street. (Board's Decision, Findings of Fact (FOF) ¶¶ 2-3, 5, 7-8, 26.)

Applicant filed the Application with the Board on October 31, 2019,[2] seeking to build either a manufactured home or a stick-built home on the Property. (FOF ¶ 10; Reproduced Record (R.R.) at 071a.) Applicant sought the following variances from Section 143-37(A)(2) of the Ordinance to allow: (1) a lot area of 6,000 square feet where 25,000 is required; (2) a lot width of 60 feet where 100 feet is required; (3) a front yard setback of 20 feet to right-of-way and 30 feet to cartway where a minimum of 50 feet is required; and (4) a rear yard setback of 14 feet where a minimum of 60 feet is required. (FOF ¶ 26; R.R. at 075a.)[3] Applicant maintained that the Property "suffers from a physical hardship" and "is a pre[]existing non-conforming lot, held in single and separate ownership, that cannot conform to current zoning regulations." (R.R. at 069a.)

On January 16, 2020, after having been advertised four times between October 1, 2019, and January 8, 2020, the Township adopted Ordinance 662, which added Section 143-145.B.(3) to the Ordinance and states:

---

[2] The Application is found at pages 66a through 80a of the Reproduced Record. The Application originally was filed by Applicant and Moser Construction Co., Inc., which was the equitable owner of the Property by Agreement of Sale at the time the Application was filed. (FOF ¶ 1.) The Agreement has since expired, and Applicant is the sole entity with an ownership interest in the property. (*Id.*)

[3] Differences exist in the requirements from which the variances were requested in the Application and those stated in the Board's Finding of Fact. For example, the Application stated that a lot area of 25,000 square feet was required, while the Finding of Fact stated 30,000 was required. (*Compare* R.R. at 075a, *with* FOF ¶ 26.) The differences are based on whether the Property would have access to both public water and sewer or access to one or the other.

3

[W]here two or more adjacent lots, one or more of which is nonconforming based on lot size, are concurrently owned by the same owner, these adjacent lots shall be merged to minimize the nonconformity. The term "same owner" as used in this subsection includes, in addition to a single person or entity, multiple persons with familial relationships and multiple parties with common ownership, business, and/or financial interests. Corporations, partnerships, or other for-profit or nonprofit entities organized or used for the purpose of avoiding of having adjacent lots being owned by the "same owner" are not recognized as separate owners for the purposes of this subsection.

ORDINANCE § 143-145.B.(3).[4]

### B. Board Proceedings

At a hearing before the Board on the Application on October 22, 2020 (October 2020 hearing),[5] Applicant was represented by counsel and presented Breinig as a witness. Numerous individuals appeared via Zoom to represent their interests as owners of nearby properties. Breinig testified that he served as the Vice President of Applicant, and the Board recognized him as an expert in real estate development, as he had appeared many times before the Board in zoning matters. (R.R. at 150a-52a.) Counsel for Applicant questioned Breinig, who testified that Applicant had previously entered into an agreement with Suburban to purchase the Suburban Lot with the intention of constructing a house of similar size to those nearby on this proposed, consolidated lot, which was conditioned upon zoning approval. (*Id.* at 154a-55a.) However, Breinig explained that the Board denied that zoning application and that the agreement with Suburban expired. (*Id.* at 155a.) Breinig described that the Board had denied other variance requests with which he

---

[4] Ordinance 662 is found at pages 324a through 426a of the Reproduced Record, and Section 143-145.B.(3) is found at page 422a.

[5] The transcript of the October 2020 hearing is located at pages 133a through 260a of the Reproduced Record.

4

had been involved, including one for Adams' property, which is the same size as the Property, and common pleas had reversed the denials. (*Id.* at 155a-56a, 161a-62a.) Breinig described how the Property, which had been laid out prior to the Township's first ordinance in 1955, was undersized and, as such, was a pre-existing, nonconforming lot. He further explained how the requested variances were for the construction of the smallest home possible, and that this sized home on the Property was consistent with the surrounding neighborhood, which also consisted of similarly sized homes on similarly undersized lots. (*Id.* at 158a-59a, 163a-65a.)

After the conclusion of the direct examination, Adams and another neighbor, Pat McKernan (McKernan), had the opportunity to question Breinig. The following exchange occurred:

> [Adams]: . . . . I just want to clarify when it was described early on that there was a plan for a consolidated property there. You mentioned they were going to build a nicer home there. And[,] so[,] my question was, Mr. Breinig, **do you have any affiliation with [] Suburban** . . . ?
>
> [Breinig]: **I do, yes**.
>
> [Adams]: All right. Is it your intention that if the zoning variance is approved that you will plan to build on lot 97, which is next to my home, is it your intention to build yet another property next to 97 on lot 98?
>
> [Breinig]: We don't know at this point.
> . . . .
>
> [McKernan]: . . . are there any modular homes in that particular area that you know of like off of Hillside, Fifth Street . . . ?
>
> [Breinig]: Not yet.
>
> [McKernan]: Not at all?

5

[Breinig]: Not yet. We have four that we are planning on putting on the four lots that we have zoning approval from.

. . . .

[McKernan]: . . . during your last meeting here for Sixth Street, I asked you a question. I'm going to ask you the same question again. Do you own property on a paper street as Eighth Street?

[Breinig]: Yes, we do.

(*Id.* at 176a-78a (emphasis added).) There appears to have been no further questions or testimony concerning Breinig's or Applicant's relationship with Suburban. The Township did not participate at the October 2020 hearing, and there was no discussion at the hearing regarding the application or impact of Ordinance 662 on the Application.

Following the October 2020 hearing, the Board issued its Decision on November 12, 2020, denying the Application. The Board made the following findings of fact concerning Breinig's association with Applicant and Suburban: (1) Breinig "testified that [Applicant] has owned the property since [] 1998"; and (2) "Breinig also testified that he owns the adjacent parcels (as Suburban Building Materials Co., Inc. and other entities) which could be utilize[d] to make the . . . [P]roperty larger." (FOF ¶¶ 13-14.) Concerning the request for variances, the Board determined that "the Property was rendered undersized and too narrow by [a] subsequently enacted Ordinance"; "the undersized nature and narrowness of the [P]roperty are unique physical circumstances peculiar to that [P]roperty giving rise to an unnecessary hardship"; the Property cannot be developed in strict adherence to the Ordinance without variances; and "the construction of the [proposed] home will not have detrimental impacts on the character of the neighborhood and the use and enjoyment of adjacent properties." (Board's Decision at 9-12.)

6

The Board held that because "Breinig testified that he owns adjacent tracts of ground under different entities," Ordinance 662 would require the merger of the adjacent lots with the Property, which would allow for more conformity with the Ordinance's zoning requirements. (*Id.* at 10.) "As evidence regarding these other tracts was not presented, the Board finds that the Application has failed in the first prong of the variance test as the Property could be brought into compliance on many of the dimensional criteria if the additional lots were merged with the [ ] Property." (*Id.*) Essentially, the Board found that "[i]f the merger requirements of [] Ordinance [662 we]re met by [] Applicant, the Property would be potentially brought into compliance with the strict requirements of the Ordinance" and many of the variances requested would not be needed. (*Id.*) Because "Applicant failed to address the merger requirements" of Ordinance 662, the Board found Applicant did not satisfy the second prong (that the property could not be developed in conformity with the ordinance), the third prong (that the hardship was not self-inflicted), the fourth prong (that granting the variance would not alter the essential character of the neighborhood, impair the use or development of adjacent property, nor be detrimental to the public welfare), or the fifth prong (that it requested the minimum variances to afford relief) of the variance test. (*Id.* at 9-12.) In doing so, the Board held that "Applicant . . . failed to present any evidence related to the number and location of adjacent tracts with common ownership" and that "[i]t is believed that [t]here are such tracts located adjacent to the [P]roperty on both Fifth Street and Fourth Street." (*Id.* at 12.) Accordingly, the Board denied the request for variances, concluding that Applicant failed to satisfy the test for a variance and to "present any evidence related to adjacent tracts and the merger of the same as required by [Ordinance 662]." (Board's Decision, Conclusions of Law ¶¶ 3-5.)

7

*C. Appeal to Common Pleas*

Applicant appealed to common pleas, and the Township filed a Notice of Intervention. Without taking additional evidence, and after hearing argument and accepting briefs on the matter, common pleas granted Applicant's appeal and reversed the Board's Decision. (Common Pleas' May 3, 2021 Order, R.R. at 430a.) On May 14, 2021, the Township moved for reconsideration of common pleas' May 3, 2021 Order, asserting that Applicant's failure to address Ordinance 662 resulted in Applicant failing to meet the requirements for obtaining the requested variances and that Breinig testified to owning Applicant and Suburban. (R.R. at 441a-43a.) The Township further asserted that common pleas lacked subject matter jurisdiction to consider the substantive validity of Ordinance 662 because Applicant had not challenged the same. (*Id.* at 443a-44a.) In the alternative, the Township requested that common pleas remand the matter to the Board to allow the Board to consider whether Ordinance 662 applied to the Application. (*Id.* at 444a.) Common pleas denied reconsideration on May 28, 2021. (*Id.* at 449a.)

The Township appealed and, at common pleas' direction, filed a Concise Statement of the Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b). In its responsive opinion filed pursuant to Rule 1925(a), common pleas explained that while the Township "acknowledge[d] that the [] Ordinance renders the [] Property non[]conforming with respect to lot size and width requirements" and "concede[d] that the undersized nature and narrowness of the [] Property are unique physical characteristics peculiar to the [] Property giving rise to an unnecessary hardship," the Township asserted "that the evidence presented at the October 2020 [h]earing demonstrated that Applicant owned lots adjacent to the [] Property under different entities and,

8

therefore, merger of these properties would be required under" Ordinance 662. (Common Pleas' 1925(a) Opinion at 5.) Common pleas determined, however, that "[t]his assertion [wa]s belied by the record," as "Breinig never testified that he was the owner of [any] immediately adjacent properties[,] and there is no evidence anywhere in the record to indicate he owns [any adjacent] properties." (*Id.* at 14.) Common pleas noted that the only discussion concerning a connection between Breinig and an adjacent property occurred during the October 2020 hearing when Adams asked if Breinig had any affiliation with Suburban, to which Breinig responded in the affirmative. (*Id.*) Determining that "[t]here [wa]s not one scintilla of evidence in the record that [Applicant] is the same company as Suburban . . . or that the two entities are inextricably linked," common pleas held the Board's findings of fact were not supported by substantial evidence, the Property was not required to be merged with the Suburban Lot under Ordinance 662, and, in the absence of such merger, the Property was entitled to the requested variances and the Board abused its discretion in concluding otherwise. (*Id.* at 14-15.)

Common pleas also addressed the substantive issue of whether Ordinance 662's definition of "same owner" was inconsistent with Pennsylvania law concerning corporate organization, the definition of separate entities, and the requirements for the traditional analysis of merger of lots, determining that a mere affiliation cannot override the law defining corporations as distinct and separate entities from its shareholders, officers, and employees and that the provision effectively "pierced the corporate veil" as to Breinig and Suburban. (*Id.* at 16.) Further, common pleas questioned the application of Ordinance 662, citing Section 917 of the Pennsylvania Municipalities Planning Code (MPC),[6] 53 P.S. § 10917, for

---

[6] Act of July 31, 1968, P.L. 805, No. 247, *as amended*, added by Section 22 of the Act of June 23, 2000, P.L. 495, 53 P.S. § 10917.

9

the proposition that Section 917's protection for applicants relying on provisions in place when their application is filed applied to the matter at hand. (*Id.* at 16-17.) Finally, common pleas opined that it appeared that the Township's enactment of Ordinance 662 was in response to the Application. (*Id.* at 17.) Accordingly, common pleas explained that it reversed the Board's Decision because the Board's necessary findings were not supported by substantial evidence and, therefore, the Board abused its discretion in denying the Application.

## II. DISCUSSION

### A. *Parties' Arguments*

On appeal, the Township argues that common pleas erred in reversing the Board's Decision. The Township maintains that "[t]he record contains sufficient evidence to establish that there was common ownership between [Applicant] and Suburban," asserting that Breinig "owns and controls parcels adjacent to the Property as a principal of Suburban." (Township's Brief (Br.) 5-6, 18.) The Township next asserts that common pleas erred in determining that Ordinance 662 was not applicable, lacked jurisdiction to determine the validity of that provision, and erroneously applied Pennsylvania law concerning the doctrine of piercing the corporate veil. (*Id.* at 5-6, 15). Further, the Township contends that common pleas erred in applying Section 917 of the MPC as that provision applies only to special exceptions or conditional uses, not requests for variances. (*Id.* at 20-24.) Finally, the Township argues that common pleas erred in denying its request for reconsideration and remand to the Board to consider the applicability of Ordinance 662 because, the Township contends, common pleas failed to judicially notice Ordinance 662 "and the circumstance[s] surrounding the passing of Ordinance 662," and relied on "factual inaccuracies . . ." in making its determination. (*Id.* at 24-26.)

The Board filed a brief adopting the arguments in the Township's Brief. (Board's Br. at 1.) However, the Board concedes that "[i]f Ordinance 662 is not applicable, the Decision of the [] Board should be overturned." (*Id.*)

Applicant responds that the Township bore the burden to prove that there was common ownership between Applicant and Suburban and did not meet that burden, as the record lacks evidence showing such common ownership. Because Applicant otherwise satisfied the test for variances if Ordinance 662 is not implicated, Applicant maintains that the Board erred in denying the Application. (Applicant's Br. at 19-20.) Applicant further asserts that because the Board's finding of common ownership is not supported by substantial evidence and because there is settled law rebutting the presumptive merging of lots of common ownership, common pleas properly reversed the Board's use of Ordinance 662 to require the merger of the Property and the Suburban Lot. (*Id.* at 14-16 (citing *Loughran v. Valley View Devs., Inc.*, 145 A.3d 815 (Pa. Cmwlth. 2016); and *Tinicum Twp. v. Jones*, 723 A.2d 1068 (Pa. Cmwlth. 1998)).)

*B. Analysis*

When a trial court reviewing the decision of a zoning hearing board takes no additional evidence, this Court reviews the zoning hearing board's decision only for an abuse of discretion or errors of law. *In re Petition of Dolington Land Grp.*, 839 A.2d 1021, 1026 (Pa. 2003). A zoning hearing "board abuses its discretion when its findings are not supported by substantial evidence." *Hawk v. City of Pittsburgh Zoning Bd. of Adjustment*, 38 A.3d 1061, 1064 n.5 (Pa. Cmwlth. 2012) (citation omitted). Substantial evidence "is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted).

11

Under Section 143-168 of the Ordinance, the Board may grant a variance where the following findings are made where relevant:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions and not the circumstances or conditions generally created by the provisions of the . . . Ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the . . . Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That the unnecessary hardship has not been created by the applicant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

ORDINANCE § 143-168.[7] *See also* Section 910.2(a) of the MPC, 53 P.S. § 10910.2(a)[8] (containing substantially the same requirements). Thus, a variance is properly granted where the applicant shows the following:

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the

---

[7] Section 143-168 of the Ordinance can be found in the Original Record at Item 32.
[8] Section 910.2 was added by Section 89 of the Act of December 21, 1988, P.L. 1329.

12

zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811-12 (Pa. Cmwlth. 2005) (quoting *Ruddy v. Lower Southampton Twp. Zoning Hearing Bd.*, 669 A.2d 1051, 1053 (Pa. Cmwlth. 1995)). A showing of unnecessary hardship for an undersized property requires that "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance." *Taliaferro*, 873 A.2d at 812 (citation omitted). Further, the hardship must be "unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on the entire district." *Id.* (citation omitted).

In the present matter, the Board determined that Applicant had not carried its burden in showing its entitlement to the requested variances essentially because Applicant failed to address the merger requirements of Ordinance 662 and the Board believed that it needed to do so. There does not appear to be any question that, in the absence of the merger requirements of Ordinance 662, Applicant would have met the requirements of the variance test, as the Board conceded as much in its brief to this Court. (Board's Br. at 1.)

Ordinance 662 provides that "where two or more adjacent lots, one or more of which is nonconforming based on lot size, are concurrently owned by the same owner, these adjacent lots shall be merged to minimize the nonconformity." ORDINANCE § 143-145.B.(3). Ordinance 662 defines "same owner" broadly to include,

13

in addition to a single person or entity, multiple persons with familial relationships and multiple parties with common ownership, business, and/or financial interests. Corporations, partnerships, or other for-profit or nonprofit entities organized or used for the purpose of avoiding of having adjacent lots being owned by the "same owner" are not recognized as separate owners for the purposes of this subsection.

*Id.*

Although the Township asserts numerous arguments as to why common pleas' Order should be reversed and the Board's Decision reinstated, we begin with the issue of whether the Board's findings of fact that the "same owner," Breinig, owned the Property and the Suburban Lot are supported by substantial evidence. If they are not, then Ordinance 662 is not implicated.

The Board will be found to have abused its discretion if its findings of fact are not supported by substantial evidence. *Hawk*, 38 A.3d at 1064 n.5. The Board found that Breinig "testified that [Applicant] has owned the Property since [] 1998" and that "Breinig also testified that he owns the adjacent parcels (as Suburban . . . and other entities)[,] which could be utilize[d] to make the subject [P]roperty larger." (FOF ¶¶ 13-14.) On appeal, both the Township and the Board cite to the transcript of the October 2020 hearing before the Board to assert that "Breinig, principal of [Applicant], owns and controls parcels adjacent to the Property as a principal of Suburban." (Township's Br. at 5-6 (citing R.R. at 176a); Board's Br. at 2 (citing R.R. at 176a).)

In our review of the October 2020 hearing, the only specific testimony by Breinig was that he was "affiliated" with Suburban, (R.R. at 176a), and he or "we," as Breinig sometimes stated, owned or had owned other properties in the area. There was no questioning or testimony at the hearing regarding the nature of that affiliation or the relationship between Applicant, Suburban, and Breinig. This testimony alone does not constitute substantial evidence that supports the finding

14

that Breinig "testified that he owns the adjacent parcels (as Suburban . . . and other entities)," (FOF ¶ 14), such that Ordinance 662 would be implicated.

It appears from the record before the Board, which accepted Breinig as an expert in real estate development due to his prior appearances before it, that Breinig owns and is actively involved in developing properties in this area, but the record also reflects that Breinig was a real estate broker, the director of a mortgage reporting service, an appraiser, and a title searcher.[9]  (R.R. at 20a, 151a-52a.)  Indeed, the Application indicates that Breinig participated as an expert in three of the variance cases cited by Applicant in which common pleas reversed the Board.  (*Id.* at 71a.)  And, the decisions in the other zoning cases cited by Applicant, in which the Board denied similar variance requests and was reversed by common pleas, do not reference Breinig.  (*Id.* at 24a-31a, 45a-61a.)   Further, those decisions do not help to establish a link between the landowners here, Applicant and Suburban, or any details regarding Breinig's relationship with Suburban. (*Id.*)  Accordingly, there was nothing else in the Board's record that supports the Board's finding that Breinig owned any of the adjacent properties, including the Suburban Lot.

Further, to be a "same owner" under Ordinance 662 so as to require the merger of adjacent properties, the "multiple parties" must have "common ownership, business, and/or financial interests," and, if involving a corporation or for-profit entity, the corporation or entity must have been "organized or used for the purpose of avoiding of having adjacent lots being owned by the 'same owner.'"  ORDINANCE

---

[9] From the transcripts of the oral argument before common pleas it appears that Breinig and his family own and have owned and developed properties in the Township for decades through various corporate entities, a fact that may have been well known to those in the area.  However, that this fact may have been generally known to the community does not make it a part of the record that **this** Court reviews on appeal to determine whether the Board's factual finding regarding Breinig's ownership of the Suburban Lot and the application of Ordinance 662 is supported by substantial evidence.

§ 143-145.B.(3). Thus, the record would have to contain evidence that Applicant and Suburban have common ownership, business, and financial interests, and were organized or used to avoid having the Property and the Suburban Lot be considered as being owned by the same owner. However, as discussed, the record in this case contains only Breinig's testimony that he was "affiliated" with Suburban. Without more, we cannot say that Applicant and Suburban have common ownership, or have common business and/or financial interests and that those entities were being used, essentially, to avoid application of Ordinance 662. While the Township asks the Court to remand to allow for additional evidence to establish Ordinance 662's applicability, the Township did not appear at the Board's hearing and cannot, now, seek to add evidence to remedy the weak proofs offered before the Board. Accordingly, because the Board's necessary findings of fact are not supported by substantial evidence, it abused its discretion in denying the variance and common pleas did not err in reversing.

The Township also argues that common pleas erred in reversing because the Board's determination is supported where Applicant "effectively admitted to common ownership under Ordinance 662 when [its] counsel . . . stated at oral argument: 'I think that if the new section were valid, and if it were in effect when we filed our zoning application, that, yes, it would apply . . . .'" (Township's Br. at 17 (quoting R.R. 15a).) Such concession, according to the Township, is "ripe for consideration" by the Court. (*Id.* (citing *Erie Indem. Co. v. Coal Operators Cas. Co.*, 272 A.2d 465, 467 n.6 (Pa. 1971)).)

In *Erie Indemnity Company*, which involved the grant of summary relief based on consideration of facts asserted in the parties' briefs, the Supreme Court vacated the order, finding that the trial court erred in relying on facts outside the

record, but noted that "if in oral argument before this Court counsel concedes certain facts these concessions may be considered by this Court." 272 A.2d at 467 n.6. While Applicant's counsel made the statement cited by the Township, counsel also stated that, when the lots in this area became nonconforming, "[t]hey were all under single and separate ownership owned by various individual parties," and that "[a]t no point have any of these lots been in common ownership." (R.R. at 007a.) Given the various statements, it is not clear that Applicant's counsel, in saying that Ordinance 662 would apply if it was valid and in effect, conceded that Applicant and Suburban had the "same owner," the fact that would be necessary for the application of Ordinance 662 to require a merger.[10]

---

[10] The Township argues common pleas erred in addressing Ordinance 662's validity because Applicant did not challenge Ordinance 662's validity before the Board. Reviewing the record before the Board, neither the applicability nor the validity of Ordinance 662 were raised before the Board and, as such, there was no evidence to meet the Township's burden of showing that Ordinance 662 was applicable. *See Appeal of Gregor*, 627 A.2d 308, 311 (Pa. Cmwlth. 1993) (holding that "[t]he burden is placed upon the party who asserts a physical merger to establish" that merger is required). Instead, it was in the Board's Decision that the application of Ordinance 662 arose, and Applicant's appeal to common pleas was the first opportunity it had to address the application of Ordinance 662 to the variance requests. Additionally, we are not persuaded that Applicant's arguments would be classified as a substantive validity challenge because Applicant's challenge to Ordinance 662 arose from that provision's application to the Property, rather than a challenge to the validity of the entire ordinance. *See Shuttle Dev. Corp. v. Upper Dublin Twp.*, 338 A.2d 777, 779 (Pa. Cmwlth. 1975) (distinguishing between a substantive challenge to the validity of an ordinance under a former, but equivalent provision of the MPC, from a variance which relates to a zoning provision's application to a particular property); *Robin Corp. v. Bd. of Supervisors of Lower Paxton Twp.*, 332 A.2d 841, 847 (Pa. Cmwlth. 1975) (same).

The Township further asserts that common pleas erred in applying Section 917 of the MPC to conclude that Ordinance 662 did not apply to the Application because that provision became effective in January 2021, which was after the Application was filed in October of 2020. In pertinent part, Section 917 of the MPC states:

> When an application for either a special exception or a conditional use has been filed with either the zoning hearing board or governing body, as relevant, and the subject matter of such application would ultimately constitute either a land

**(Footnote continued on next page…)**

### III. CONCLUSION

For the foregoing reasons, we conclude that the Board abused its discretion in concluding that Applicant failed to meet its burden of proof on its respective variances because the Board's necessary finding of fact that Breinig testified to owning the adjacent Suburban Lot was not supported by substantial evidence. Accordingly, we affirm common pleas' Order.

**RENÉE COHN JUBELIRER,** President Judge

development as defined in section 107 or a subdivision as defined in section 107, no change or amendment of the zoning, subdivision or other governing ordinance or plans shall affect the decision on such application adversely to the applicant, and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.

53 P.S. § 10917. Initially, we note that we are reviewing the Board's decision in this matter because common pleas did not take additional evidence. However, even if we were reviewing common pleas' reasoning, we would conclude that any error in common pleas applying Section 917 or concluding that Ordinance 662 was inapplicable because the Application was filed before Ordinance 662's effective date would constitute harmless error because it would not affect the outcome where common pleas gave other reasons for reversing the Board's Order, with which we agree.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Curtis Building     :
Co., Inc.     :
PO Box 415     :
Jenkintown, PA 19046     :
     :
From the Decision of the     :   No. 645 C.D. 2021
Lower Providence Township     :
Zoning Hearing Board     :
100 Parklane Drive     :
Eagleville, PA 19403     :
     :
Regarding Property at 5th Street     :
Between the House 3002 5th     :
Street and the Lot of Suburban     :
Building Co. Block 21, Units 96     :
and 97 Lower Providence Township,     :
Norristown, PA 19403     :
Parcel No. 43-00-04681-00-1     :
     :
Appeal of: Lower Providence     :
Township     :

# O R D E R

NOW, November 16, 2022, the May 3, 2021 Order of the Court of Common Pleas of Montgomery County reversing the November 12, 2020 Decision of Lower Providence Township Zoning Hearing Board is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge